UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DUSTIN ADAMS and KARLA ADAMS,<br><br>Defendants. | Criminal Action No. 23-326 (JDB) |

**MEMORANDUM OPINION & ORDER**

Defendants Dustin and Karla Adams are charged by information with four misdemeanor counts based on their alleged participation in the January 6, 2021 riot at the U.S. Capitol. Before the Court is the Adamses' joint motion to dismiss all four counts of the information. For the reasons that follow, the Court will deny the motion.

**Background**

On January 6, 2021, Congress assembled in a joint session at the U.S. Capitol to certify the Electoral College vote of the 2020 Presidential Election. Statement of Facts [ECF No. 1-1] ("SOF") at 1.[1] This joint session began around 1:00 p.m. and was supposed to continue throughout the afternoon. See id. However, a large crowd of protesters broke through security barriers and overwhelmed the law enforcement officers guarding the building, with the first rioters entering the Capitol around 2:00 p.m. Id. Members of Congress and the Vice President were forced to flee for their safety, effectively suspending the joint session from around 2:20 p.m. until shortly after 8:00 p.m. Id. "All told, the riot caused millions of dollars in damage to the Capitol, and approximately

---

[1] This factual background draws on the affidavit in support of the criminal complaint against the Adamses. Judges in this District have often considered such affidavits to flesh out background facts in January 6 prosecutions. See, e.g., United States v. McHugh, 583 F. Supp. 3d 1, 8 n.2 (D.D.C. 2022); United States v. Grider, 617 F. Supp. 3d 42, 47 n.2 (D.D.C. 2022); United States v. Mostofsky, 579 F. Supp. 3d 9, 13–14 (D.D.C. 2021). And the Adamses treat the affidavit here as properly setting forth the government's factual allegations. See Reply in Supp. of Mot. to Dismiss [ECF No. 32] at 2, 8–10, 12.

1

140 law enforcement officers were injured in the fighting—the January 6th riot was, in short, the most significant assault on the Capitol since the War of 1812." United States v. McHugh, 583 F. Supp. 3d 1, 8 (D.D.C. 2022) (internal quotation marks omitted).

Social media posts and video footage appear to show the Adamses among the members of the mob who entered the Capitol on January 6. See SOF at 2–10. The government alleges that the Adamses entered through the Senate Wing Doors around 2:21 p.m., proceeded to the Crypt, and then retraced their steps and exited through the Senate Wing Doors around 2:27 p.m. See id. at 7–10. The government charged the Adamses by information with four misdemeanor counts: entering and remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1) (Count One); disorderly and disruptive conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2) (Count Two); disorderly conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four). See Information [ECF No. 7] at 1–2.

The Adamses moved to dismiss all four counts of the information. See Mot. to Dismiss [ECF No. 30] ("Mot."). The government opposed the Adamses' motion, see Opp'n to Mot. [ECF No. 31] ("Opp'n"), the Adamses filed a reply, see Reply in Supp. of Mot. [ECF No. 32] ("Reply"), and the government filed a surreply addressing arguments newly raised in the Adamses' reply brief, see Sur-Reply to Reply [ECF No. 33]. The motion is now fully briefed and ripe for decision.[2]

---

[2] The Court will consider the Adamses' motion notwithstanding the fact that it was filed several days after the motions deadline and the Adamses have not shown "good cause" for the delay. Fed. R. Crim. P. 12(c)(3). And because the government was otherwise "unable to contest matters presented to the court for the first time" in the Adamses' reply brief, the Court will grant the government leave to file its surreply and will consider the surreply in deciding the Adamses' motion. Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003) (internal quotation marks omitted).

2

**Legal Standard**

Defendants in a criminal case may move before trial to dismiss the information against them for, inter alia, "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An information may "fail[] to state an offense" where "the statutory provision at issue does not apply to the charged conduct . . . or the statutory provision at issue is unconstitutional." McHugh, 583 F. Supp. 3d at 10 (citations omitted). In ruling on a motion to dismiss an information, courts assume the truth of the government's proffered facts and ask only whether the information is legally sufficient on its face. See id. A challenge to the sufficiency of the government's evidence is premature at the motion-to-dismiss stage. Id.

**Analysis**

The Adamses advance five arguments for dismissal of the information: (1) each count of the information is insufficient because each "fails to provide necessary allegations of fact," (2) certain counts do not apply to the Adamses' charged conduct, (3) the statutory basis for Count Four, 40 U.S.C. § 5104(e)(2)(G), is both unconstitutional as applied to the Adamses' conduct and void for vagueness, (4) it is "contested" whether the Adamses knew that the Capitol was a restricted building, and (5) the U.S. Capitol Police authorized entry into the Capitol on January 6 by issuing certain permits for demonstrations. See Mot. at 8–12, 18–20; Reply at 7, 11, 14–15, 21–25. The Court will consider each argument in turn.

I. **Sufficiency of the Information**

The Adamses argue, in their reply brief, that the information must be dismissed because each count lacks specific "factual allegation[s] for at least one of the necessary elements." Reply at 1.[3] For example, the Adamses contend that the information needed to allege "the specific sign

---

[3] The concluding paragraph in the Adamses' opening brief contains a single sentence that alludes to factual insufficiencies in the information. See Mot. at 20 ("[E]ven assuming that the facts alleged in the Information are true,

3

postings, cordons, or other specific method of restriction [of the Capitol] at a specific time and location . . . that the Adams[es] could reasonably observe." Id. at 8. They also maintain, among other things, that the government's factual allegations are insufficient because "[t]here are no allegations that the Adams[es] displayed signs, made any demonstration gestures, walked in some special manner, blocked any hallway or path, or refused to move" while in the Capitol. Id. at 16. Even assuming these arguments are not forfeited by way of inadequate development in the Adamses' opening brief, see Fox v. Gov't of D.C., 794 F.3d 25, 29 (D.C. Cir. 2015), they miss the mark.

"To be sufficient under the Constitution, an indictment [or information] 'need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.'" United States v. Williamson, 903 F.3d 124, 130 (D.C. Cir. 2018) (quoting United States v. Verrusio, 762 F.3d 1, 13 (D.C. Cir. 2014)). This requirement is reflected in Federal Rule of Criminal Procedure 7(c)(1), which provides that an indictment or information must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "[I]t is generally sufficient that an indictment [or information] set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." Williamson, 903 F.3d at 130 (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). Courts have found charging documents proper where they "echo[] the operative statutory text while also specifying the time and place of the offense." Id.; see also United States v. Resendiz-Ponce, 549 U.S. 102,

---

they are still insufficient to permit a finding that the Adams[es] committed a criminal offense."). The government noted this was a "bare assertion" devoid of "any analysis," but proceeded to generally address the sufficiency of the information out of an abundance of caution. Opp'n at 6; see id. at 3–7. In their reply, the Adamses launched a broadside of new, specific arguments as to the factual insufficiency of the information. See Reply at 1–21.

4

108 (2007) ("[T]he time-and-date specification in [the defendant's] indictment provided ample protection against the risk of multiple prosecutions for the same crime.").

The information in this case clears that threshold. While concise, the information sets out the elements of each count and further specifies that the alleged offenses occurred in the District of Columbia at the Capitol building (or Capitol grounds, as relevant) on January 6, 2021. See Information at 1–2. "No more is required." United States v. Nassif, 628 F. Supp. 3d 169, 185 (D.D.C. 2022), aff'd, No. 23-3069, 2024 WL 1515004 (D.C. Cir. Apr. 9, 2024). At bottom, the Adamses take issue with the government "being less specific than [it] could be in spelling out the acts that constitute [each] offense," but this is not grounds for dismissal where the information properly states the elements of each offense. United States v. Nordean, 579 F. Supp. 3d 28, 61 (D.D.C. 2021) (quoting United States v. Conlon, 628 F.2d 150, 156 n.33 (D.C. Cir. 1980)).

This Court has previously rebuffed factual-sufficiency challenges to charging language very similar to that at issue here. In Nassif, the defendant argued that the information failed to state an offense as to 40 U.S.C. § 5104(e)(2)(G) because the information lacked "specifics" and did not identify the exact "form of speech or expressive conduct" underpinning the charge. 628 F. Supp. 3d at 184; accord Reply at 16 (advancing similar arguments here). This Court acknowledged that the information was concise, but concluded that it contained the elements of the charged offense—"parad[ing], demonstrat[ing], or picket[ing]" within a Capitol building—and "fairly inform[ed]" Nassif of the charges against him by specifying the date and place of the offense. 628 F. Supp. 3d at 184–85.

Other judges in this District have proceeded along similar lines. See United States v. Ballenger, Crim. A. No. 21-719 (JEB), 2022 WL 14807767, at *1–2 (D.D.C. Oct. 26, 2022) (rejecting defendants' contention, in a case involving the same four misdemeanors at issue here,

"that the Information [must] lay out in detail the facts underlying each of the charged offenses"); United States v. Gray, 652 F. Supp. 3d 112, 129 (D.D.C. 2023) (rejecting similar argument as to 40 U.S.C. § 5104(e)(2)(G)); United States v. Seitz, Crim. A. No. 21-279 (DLF), ECF No. 51, at 17–19 (D.D.C. Aug. 17, 2022) (oral ruling) (same); United States v. Sargent, Crim. A. No. 21-258 (TFH), 2022 WL 1124817, at *9 (D.D.C. Apr. 14, 2022) (rejecting similar argument as to 18 U.S.C. § 1752(a)(1) and (a)(2)).  And the D.C. Circuit has concluded—albeit in the context of a motion for release pending appeal—that another January 6 defendant had not "raised a substantial question" as to whether the superseding information under which she was charged "needed to allege that she 'joined a mob'" in order to "provide sufficient notice of the elements of the offense." United States v. Ballenger, No. 23-3198, 2024 WL 1223519, at *1 (D.C. Cir. Mar. 15, 2024) (per curiam).

The Adamses are correct that "[w]here guilt depends . . . crucially upon . . . a specific identification of fact," an indictment or information may need to provide greater specificity.  Reply at 4 (second omission in original) (quoting Russell v. United States, 369 U.S. 749, 764 (1962)). The leading case for that principle is Russell, where the Supreme Court reasoned that an indictment charging a witness summoned before a congressional committee with refusing to answer a question "pertinen[t] to the subject under inquiry" must go beyond the words of the statute and allege the subject "under inquiry."  369 U.S. at 764–66.  Apparently, "the relevant hearing's subject [had been] frequently uncertain" in such prosecutions.  Resendiz-Ponce, 549 U.S. at 109.  And in Russell itself, the defendant had been "met with a different theory, or by no theory at all" regarding the alleged "subject under inquiry" at each stage in the proceedings; the lack of specificity in the indictment "left the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal."  Russell, 369 U.S. at 768.

Guilt under the charges asserted here does not depend so "crucially" upon "a specific identification of fact." And, unlike the chameleonic theory of criminality in Russell, there is no question that the Adamses are charged based on their alleged entry into the Capitol building during the January 6 Capitol assault. The Adamses have "adequate notice" of the charges against them and the "time-and-date specification in [the information] provide[s] ample protection against the risk of multiple prosecutions for the same crime." Resendiz-Ponce, 549 U.S. at 108. In any event, the Supreme Court appears to read Russell far more narrowly than do the Adamses. See id. at 110 (distinguishing Russell and emphasizing that, "[w]hile detailed allegations might well have been required under common-law pleading rules, they surely are not contemplated by Rule 7(c)(1)" (citation omitted)). Hence, the Court rejects the Adamses' challenges to the factual specificity of each count of the information.

## II. Application to Charged Conduct

The Adamses' factual sufficiency discussion can also be read as raising arguments that Counts Two and Three must be dismissed because the Adamses' alleged presence in the Capitol on January 6, without more, cannot support charges based on "disorderly or disruptive conduct." Reply at 12–15; see McHugh, 583 F. Supp. 3d at 10 (noting that an information may fail to state an offense where "the statutory provision[s] at issue do[] not apply to the charged conduct").

This argument runs up against D.C. Circuit precedent. In United States v. Alford, 89 F.4th 943 (D.C. Cir. 2024), the D.C. Circuit considered an appeal by a January 6 defendant convicted of the same four misdemeanor counts at issue here who contended that there was insufficient evidence that his conduct was "disorderly or disruptive." See id. at 947–49. The D.C. Circuit held that a rational jury could conclude that his conduct was both disorderly and disruptive. Id. at 952. A rational jury could conclude that Alford's conduct was "disruptive,"

7

> because his presence in the Capitol contributed to the Congress's multi-hour delay in completing the electoral certification. . . . Alford's entry into the Capitol—alongside dozens of others—directly contributed to the Congress's need to recess to ensure the safety of its members. Indeed, entering the Capitol as part of a crowd rather than as a lone individual magnified the disruptiveness of his presence. Each additional person, no matter how modestly behaved, increased the chaos within the building, the police's difficulty in restoring order and the likelihood of interference with the Congress's work.

Id. at 952–53. And a rational jury could also conclude that Alford's conduct was "disorderly,"

> because, viewed in the context of the day's events, [his actions] "tend[ed] to disturb the public peace, offend public morals, or undermine safety." See Black's Law Dictionary [292 (7th ed. 1999)]. . . . Alford's unauthorized presence in the Capitol as part of [a] large and unruly group jeopardized the safety of the Congress as well as the police on the scene. It is also clear that the rioters created a widespread public disturbance. Alford played a part in that by adding to the crowd . . . .
>
> Alford paints himself as a passive observer, and, granted, his conduct does not rise to the level of culpability of many of his compatriots. But he made a deliberate choice to join the crowd and enter the Capitol when he was plainly not permitted to do so. The jury was not required to view Alford's actions in isolation as though he were the only one at the Capitol that day. It was entitled to interpret Alford's actions in light of the circumstances. Those circumstances manifest that there was sufficient evidence to support the jury's verdict.

Id. at 953 (second alteration in original).

Alford's reasoning forecloses the Adamses' argument for dismissal of Counts Two and Three, and the Court will accordingly reject this argument.[4]

---

[4] The Adamses also advance a closely related argument. They point out that the joint session of Congress was "effectively suspended" around 2:20 p.m. Reply at 13, 15; see SOF at 1. Nodding toward the allegation that they entered the Capitol at 2:21 p.m., they contend that they "could not, in any manner, disrupt government business or official functions that were not occurring." Reply at 13, 15. But, as this Court has previously concluded, "[t]he joint session continued to be obstructed, influenced, and impeded even after Vice President Pence and Members of Congress had fled, as it continued to remain in limbo as the January 6 mob flooded the Capitol throughout the day." United States v. Brock, 628 F. Supp. 3d 85, 91 (D.D.C. 2022), aff'd in part, vacated in part, No. 23-3045, 2023 WL 3671002 (D.C. Cir. May 25, 2023). Alford adopts similar reasoning. See 89 F.4th at 952 ("[P]resence in the Capitol contributed to the Congress's multi-hour delay in completing the electoral certification."); see also, e.g., United States v. Rivera, 607 F. Supp. 3d 1, 9 (D.D.C. 2022), aff'd, No. 22-3088, 2023 WL 8594077 (D.C. Cir. Dec. 12, 2023).

### III.   First Amendment and Vagueness Challenges

In their opening brief, the Adamses maintain that "the First Amendment protects [their] political expression and advocacy as alleged on January 6" and that a "regulation" of their speech is impermissible.  Mot. at 3, 7; see also id. at 5–8, 12–17.  The Adamses do not specify which of the charged statutory provisions they challenge under the First Amendment, whether they believe these provisions to be content-based or content-neutral, whether any such challenges are facial or as-applied, or whether this Court should review under the strict scrutiny rubric or only for reasonableness.  The Adamses also focus their First Amendment discussion on the Capitol grounds, notwithstanding the fact that the charges in this case are based largely on their entry into the Capitol building itself.  See, e.g., id. at 5–6, 13.  The government pointed out these deficiencies in its opposition brief.  See Opp'n at 11.  In their reply, the Adamses renew their First Amendment arguments and specify that they are challenging 40 U.S.C. § 5104(e)(2)(G) as unconstitutional as applied to their conduct (and also as unconstitutionally vague).  See Reply at 21–25.  Accordingly, the Court understands the Adamses' First Amendment challenge to be limited to § 5104(e)(2)(G), the statutory basis for Count Four.[5]

Section 5104(e)(2)(G) prohibits "willfully and knowingly . . . parad[ing], demonstrat[ing], or picket[ing] in any of the Capitol Buildings."  40 U.S.C. § 5104(e)(2)(G).  The Adamses challenge this provision as unconstitutional as applied to their conduct, not on its face.  See Reply at 21, 23.  Any facial challenge would likely run aground on the D.C. Circuit's recent decision in United States v. Nassif, No. 23-3069, 2024 WL 1515004 (D.C. Cir. Apr. 9, 2024).  There, the D.C.

---

[5] The Court notes, however, that other judges in this District have rejected similar First Amendment challenges to the three other statutory provisions the Adamses are charged with violating.  See United States v. Rhine, 652 F. Supp. 3d 38, 57–66 (D.D.C. 2023); United States v. Baez, Crim. A. No. 21-507 (PLF), 2023 WL 3846169, at *5–10 (D.D.C. June 2, 2023).  And these other provisions criminalize conduct that is markedly less expressive than that criminalized by § 5104(e)(2)(G).  Cf. Virginia v. Hicks, 539 U.S. 113, 124 (2003) ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating).").

9

Circuit rejected a facial challenge to § 5104(e)(2)(G), reasoning that the Capitol buildings are a nonpublic forum (at least on the record presented) and that Congress reasonably determined "that opening the Capitol doors to parading, demonstrating, or picketing would detract from the efficacy of the Capitol buildings as the workplaces of the legislative branch." Id. at *9; see id. at *4–9.

As for the Adamses' as-applied challenge, it is premature at the motion-to-dismiss stage. The factual record regarding the Adamses' specific conduct has yet to be developed. See McHugh, 583 F. Supp. 3d at 10, 23. Indeed, judges in this District have routinely concluded that as-applied challenges to this very provision are premature on a motion to dismiss. See United States v. Baez, Crim. A. No. 21-507 (PLF), 2023 WL 3846169, at *6, *10 (D.D.C. June 2, 2023); Gray, 652 F. Supp. 3d at 132; Seitz, Crim. A. No. 21-279, ECF No. 51, at 19.

The Adamses also contend that § 5104(e)(2)(G) is unconstitutionally vague. See Reply at 23–25. This Court has squarely rejected that argument on multiple occasions and incorporates its prior reasoning by reference here. See Nassif, 628 F. Supp. 3d at 182–84; United States v. Sheppard, Crim. A. No. 21-203 (JDB), 2022 WL 17978837, at *5–6 (D.D.C. Dec. 28, 2022). In short, "[t]hat § 5104(e)(2)(G) may require a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask, does not render the statute constitutionally infirm." Nassif, 628 F. Supp. 3d at 183–84 (cleaned up). Many other judges in this District have similarly concluded that § 5104(e)(2)(G) is not unconstitutionally vague. See United States v. Munchel, Crim. A. No. 21-118 (RCL), 2023 WL 2992689, at *9 (D.D.C. Apr. 18, 2023); Gray, 652 F. Supp. 3d at 132–33; United States v. Rhine, 652 F. Supp. 3d 38, 61–62 (D.D.C. 2023); Ballenger, Crim. A. No. 21-719, ECF No. 70, at 1–2; Seitz, Crim. A. No. 21-279, ECF No. 51, at 15–17.

The Adamses' vagueness challenge may also fail for another reason. A line of Supreme Court precedent holds that an individual "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Holder v. Humanitarian L. Project, 561 U.S. 1, 20 (2010) (internal quotation marks omitted). The D.C. Circuit invoked this principle in Nassif to reject the defendant's vagueness challenge to § 5104(e)(2)(G). The panel reasoned that, "[u]nder any plausible definition of the term, Nassif was 'demonstrating' when he joined a group of hundreds of people, many carrying signs, banners, or flags, who shouted or chanted as they descended on and entered into the Capitol seeking to halt the certification of the 2020 election." Nassif, 2024 WL 1515004, at *9. And because § 5104(e)(2)(G) "clearly proscribed [Nassif's] own conduct," he was foreclosed from bringing a general void-for-vagueness challenge. Id. at *9–10. To the extent that the trial evidence shows that the Adamses entered the Capitol under similar circumstances as Nassif, they would likewise be precluded from bringing a vagueness challenge.

**IV.   Remaining Arguments**

The Adamses' last two arguments merit only brief discussion. The Adamses gesture toward an argument that the Capitol was not "restricted" within the meaning of 18 U.S.C. § 1752(a)(1) and (a)(2) because "no law of Congress," "[n]o published federal rule or regulation," and "[n]o detailed court case . . . makes the Capitol a restricted area." Mot. at 8–9. That mistakes the inquiry. The statute defines the term "restricted building or grounds" as, inter alia, "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). The Capitol's restricted status on January 6 derives not from a specific statutory identification of the Capitol as a restricted building but rather from the temporary presence of Vice

11

President Mike Pence (a Secret Service protectee) at the joint session of Congress.  See McHugh, 583 F. Supp. 3d at 29–35.

More specifically, the Adamses assert that they could not have known that the Capitol was a restricted building because "signage [is] but one consideration" and the presence of other protesters "contributed to [their] innocent state[] of mind."  Mot. at 10–11; see id. at 8–12.  This challenge to the sufficiency of the government's evidence is premature at this stage.  See McHugh, 583 F. Supp. 3d at 10; see also United States v. Yakou, 428 F.3d 241, 246–47 (D.C. Cir. 2005).

The Adamses also contend that U.S. Capitol Police officers authorized their entry into the Capitol by issuing "six different permits for demonstrations to be held on the U.S. Capitol Grounds" on January 6.  Mot. at 19; see id. at 18–20.  Even assuming that a public authority or entrapment-by-estoppel defense is proper at this stage and that the Adamses could clear the various hurdles to invoke such a defense, see Sheppard, 2022 WL 17978837, at *7–9; United States v. Eicher, Crim. A. No. 22-38 (BAH), 2023 WL 3619417, at *1–4 (D.D.C. May 23, 2023), the Adamses' argument fails on its own terms.  The six permits relied on by the Adamses authorized gatherings in specified "demonstration areas" on the Capitol grounds—not within the restricted area or the Capitol building itself.  See Mot. at 19–20; Opp'n at 20–21; U.S. Capitol Grounds Demonstration Areas Map [ECF No. 31-1].  The issuance of these permits therefore has no bearing on whether the Adamses lawfully entered the Capitol building.

## Conclusion

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [30] defendants' motion to dismiss the information is **DENIED**.

**SO ORDERED**.

/s/<br>JOHN D. BATES<br>United States District Judge

Dated: April 19, 2024